# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OHIO

## EASTERN DIVISION

**FILED**

SEP 16 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

| | |
|---|---|
| **CLARK A. ROBERTSON**<br>3527 S. FEDERAL WAY, 103-15<br>BOISE, IDAHO 83705 | :    **CASE NO.**<br>: **5:22 CV 1652** |
| **PLAINTIFF,** | :    **JUDGE** |
| **v.** | : |
| **EMILY JANOSKI-HAEHLEN**<br>DEAN, UNIVERSITY OF AKRON SCHOOL OF LAW<br>MCDOWELL LAW CENTER<br>150 UNIVERSITY AVENUE<br>AKRON, OHIO 44325-2901 | :    **JUDGE NUGENT**<br>:<br>:<br>: **MAG. JUDGE PARKER**<br>: |
| **CHRISTOPHER J. PETERS**<br>FORMER DEAN, UNIVERSITY OF AKRON SCHOOL OF<br>     LAW<br>MCDOWELL LAW CENTER<br>150 UNIVERSITY AVENUE<br>AKRON, OHIO 44325-2901 | :<br>:<br>:<br>: |
| **CHARLES OLDFIELD**<br>ASSIST. DEAN, UNIVERSITY OF AKRON SCHOOL OF LAW<br>MCDOWELL LAW CENTER<br>150 UNIVERSITY AVENUE<br>AKRON, OH 44325-2901 | : **COMPLAINT AND JURY**<br>:<br>: **DEMAND**<br>: |
| **GARY L. MILLER, PH.D.**<br>PRESIDENT<br>UNIVERSITY OF AKRON<br>302 BECHTEL AVE.<br>AKRON, OHIO 44325 | :<br>:<br>: |
| **DALE E. GOODING, JR.**<br>CHIEF, UNIVERSITY OF AKRON POLICE DEPARTMENT<br>146 HILL STREET<br>AKRON, OHIO 44325-0402 | :<br>:<br>: |
| | : |

| | | |
|---|---|---|
| **CLARK A. ROBERTSON**<br>3527 S. FEDERAL WAY, 103-15<br>BOISE, IDAHO 83705 | :<br><br>: | CASE NO. |
| **PLAINTIFF,** | : | **JUDGE** |
| **V.** | : | |
| **EMILY JANOSKI-HAEHLEN**<br>DEAN, UNIVERSITY OF AKRON SCHOOL OF LAW<br>MCDOWELL LAW CENTER<br>150 UNIVERSITY AVENUE<br>AKRON, OHIO 44325-2901 | :<br><br>:<br><br>: | |
| **CHRISTOPHER J. PETERS**<br>FORMER DEAN, UNIVERSITY OF AKRON SCHOOL OF<br>    LAW<br>MCDOWELL LAW CENTER<br>150 UNIVERSITY AVENUE<br>AKRON, OHIO 44325-2901 | :<br><br>:<br><br>:<br><br>: | |
| **CHARLES OLDFIELD**<br>ASSIST. DEAN, UNIVERSITY OF AKRON SCHOOL OF<br>    LAW<br>MCDOWELL LAW CENTER<br>150 UNIVERSITY AVENUE<br>AKRON, OH 44325-2901 | :<br><br>:<br><br>: | **COMPLAINT AND**<br><br>**JURY DEMAND** |
| **GARY L. MILLER, PH.D.**<br>PRESIDENT<br>UNIVERSITY OF AKRON<br>302 BECHTEL AVE.<br>AKRON, OHIO 44325 | :<br><br>:<br><br>: | |
| **DALE E. GOODING, JR.**<br>CHIEF, UNIVERSITY OF AKRON POLICE<br>    DEPARTMENT<br>146 HILL STREET<br>AKRON, OHIO 44325-0402 | :<br><br>:<br><br>:<br><br>: | |
| | : | |
| **JAMES P. WEBER**<br>FORMER UNIVERSITY OF AKRON POLICE | : | |

**DALE E. GOODING, JR.**
CHIEF, UNIVERSITY OF AKRON POLICE DEPARTMENT
146 HILL STREET
AKRON, OHIO 44325-0402

**JAMES P. WEBER**
FORMER UNIVERSITY OF AKRON POLICE
146 HILL STREET
AKRON, OHIO 44325-0402

**TODD R. HOUGH**
OFFICER, UNIVERSITY OF AKRON POLICE
146 HILL STREET
AKRON, OHIO 44325-0402

**THOMAS A. GEDEON**
OFFICER, UNIVERSITY OF AKRON POLICE
146 HILL STREET
AKRON, OHIO 44325-0402

**THOMAS WAYNER**
OFFICER, UNIVERSITY OF AKRON POLICE
146 HILL STREET
AKRON, OHIO 44325-0402

**UNIVERSITY OF AKRON SCHOOL OF LAW**
150 UNIVERSITY AVE.
AKRON OHIO 44325

**DEFENDANTS.**

## COMPLAINT FOR MONEY DAMAGES WITH JURY DEMAND

Plaintiff Clark Robertson presents this Complaint for Money Damages with Jury Demand under RICO Statutory 38 U.S.C. § 1961- 68; 18 U.S.C. §1513(e), conspiracy, false imprisonment, fraud, obstruction of justice, Title 18, U.S.C. Section 249 – Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act, Title 18, U.S.C. Section 249 – Conspiracy Against Rights, Title 18, U.S.C. Section 249 – Deprivation of Rights Under color of Law, and state law claims of violation of the Ohio Constitution, stating as follows:

1. This Court has federal jurisdiction over the federal claims asserted in this Complaint pursuant to 28 U.S.C. §1331. This court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

2. All operative facts giving rise to this Complaint occurred within the City of Akron, Summit County, Ohio. Venue is proper in this Court.

3. As 32nd Degree Master; Oh Lord, my God, is there no help for the Widow's son?

4. Plaintiff Clark Robertson is a 71-year old resident of the City of Boise in Ada County, Idaho. Plaintiff suffers severe Heart Disease and has six 80 percent plus blockages in his Coronary Arteries, and struggles to live and remain healthy with expert medical care from his Cardiologist.

5. Plaintiff is a veteran with a mental health disability of anxiety. Plaintiff was a law student at the University of Akron Law School. Plaintiff is an Amateur Extra Class ham radio operator KJ7BMS and holds post graduate degrees including an MBA, an LL.M. in Taxation, an LL.M. in International legal studies (Honors), a J.D. from San Francisco

3

Law School, a California Bar Approved Law School and B.S. degrees in Geophysics, and Geology.

6. Plaintiff received a SSDI determination from the Social Security Administration (SSA) in 2005 based upon severe anxiety and the SSA determination letter was provided to University of Akron ("UA") Office of Accessibility in January 2017. Plaintiff received reasonable accommodation for the LSAT exam as well additional time for UA Law and UA MPA exams and was issued and in possession of State and UA Disability Parking Placards for parking in disability parking areas at UA from January 2017 through August 2018.

7. The University of Akron Law School is an "institution of higher education" under Ohio Revised Code Chapter 3345, specifically 3345.12(A)(1). It is located within Summit County, Ohio. The law school receives state and federal funds.

8. Defendants Dean Emily Janoski-Haehlen, former Dean Christopher J. Peters and Charles Oldfield as Deans of the School of Law at the University of Akron were, acting under the color of state law, participated in certain unlawful conduct described below. Deans Peters, Janoski-Haehlen, and Oldfield have a policy and custom of violating student's rights in falsely implementing commitments to a mental hospital as a means of retaliation. They are sued in their individual and official capacities.

9. Defendant Dale E. Gooding, Jr. is the current Chief of University of Akron Police. The University of Akron Police are "state university law enforcement officers" under Ohio Revised Code 3345.04. The University of Akron Police Department has or had during

4

Plaintiff's time at the University a policy and custom of violating constitutional rights when implementing an involuntary commitment. He is sued in his official capacity.

10. Defendants Todd R. Hough and James P. Weber were the responding officers of the University of Akron Police Department, who, acting under color of state law, unlawfully placed Plaintiff in custody and detained him on August 29, 2018. . Although UA Police promised a quick transport to the hospital, in the digital recording and Court Reporter Certified transcript ("Transcript") against Plaintiff's will, and repeated denial of any suicidal thoughts, UA Police officers "cooked" plaintiff in 90 degree afternoon heat for at least one-half an hour, with windows closed and engine off, while vulnerable and alone in a Hot UA SUV, with engine turned off, windows closed and no AC while all officers were inside UA Police Headquarters at 146 Hill Street performing unknown activities.

11. As result of UA Police outrageous abuse and Torture of Plaintiff, a disabled, elderly 67 year old with heart disease by sadistically utilizing the high ambient temperature of 90 degrees in a locked extremely hot enclosed space. With serious physical injury to Plaintiff's kidneys from dehydration, and in a state of horrific state of shock, mental duress and demonstrable physical injury to kidneys shock from the outrageous abuse by UA Police, and barely able to walk, UA Police forced Plaintiff to walk into the SUMMA hospital emergency room for invasive psychiatric assessment.

12. However, due to serious injury to Plaintiffs' kidneys based upon blood analysis by an Emergency Room physician (less than 4 hours following an office visit with SUMMA Primary Care Physician Dr. Armao, (seeking medical help as result of abuse by Dean

Oldfield circa 5 p.m. on August 29, 2018, was shocked of the serious, shocking, and rapid decline in Plaintiff's health). Plaintiff was immediately taken to another location in the Hospital and placed on intravenous saline drip and medication for 22 hours, due to sadistic kidney damage caused by being "cooked" in the Hot UA Police SUV for at least one-half hour in 90 degree heat. Hough and Weber have a custom and policy of violating constitutional rights and Ohio law when implementing involuntary commitment laws. They are sued in their individual and official capacities.

13. Defendant Thomas A. Gedeon is one of the responding officers who, acting under color of state law, violated the Ohio and U.S. Constitution in the context of its psychiatric assessment of Plaintiff (during a 5-7 minute coaching engagement to conspire with Deans Peters, Oldfield, Janoski, and registrar Misty Franklin to fabricate a "diagnosis" of Plaintiff as 'suicidal' for a second time after Dean Oldfield's unlawful first attempt when Plaintiff on November 6, 2017 sought an accommodation in Oldfield's Law class) and arrest on August 29, 2018. Gedeon, is unqualified to make psychiatric assessments and blatantly refused to speak with Plaintiff's Physician whom he had seen less than three hours earlier when Plaintiff calmly and politely requested Gedeon to do so. Gedeon has a policy and custom of violating students' constitutional rights when implementing involuntary commitment law and transport. He is sued individually and in his official capacity.

14. Defendant Thomas Wayner is one of the responding officers who, acting under color of state law, violated the Ohio and U.S. Constitution in his assessment and arrest of

6

Plaintiff Clark Robertson on August 29, 2018.  He is sued individually and in his official capacity.

15. Plaintiff began attending the University Of Akron School Of Law in January 2017. He was awarded a three-year scholarship of $15,000.00 per year. Plaintiff was known by University of Akron (UA) and UA Law School to be a disabled person and was accommodated for disabilities through Office of Accessibilities.

16. Throughout plaintiff's time as a student, the Defendant Deans as well as other employees and students continually harassed and ridiculed Plaintiff based on his age (the oldest law student as of January 2017), and awareness of diagnosed mental health disability of anxiety, as they were provided with Office of Accessibility letters for Accommodation.

17. On afternoon of November 6, 2017, following a reasonable request for an additional accommodation for all assignments in LARW I class to be due at 11:59 PM as all other Plaintiff's Law professors provided, Dean Oldfield told Plaintiff that he was "Suicidal" and had the choice of either being evaluated by Cleveland Clinic for a psychiatric disorder or dropping out of Law classes for two semesters. Plaintiff had for a number of months voluntarily saw the UA Psychologist, Juanita Martin, Ph.D. to help Plaintiff manage anxiety, and at **no time** did Dr. Martin opine Plaintiff was ever "suicidal", as evidenced in her Summary Report.  In fact, only Oldfield (a layperson) was the only one who deemed Plaintiff to be 'suicidal' (a medical diagnosis) when Oldfield diagnosed Plaintiff as Suicidal on November 6, 2017 (then later on August 29, 2018, after threatening to "Fuck Plaintiff's crazy ass" on August 17, 2018, 4 days after a

7

Federal Mediation, following a Federal Complaint with the U.S. Department of Education Office of Civil Rights). That day, Oldfield wrongfully forced Plaintiff to walk to the University of Akron Counseling Center, where he had met with Dr. Martin, Ph.D. on numerous occasions to resolve minor anxiety issues, and had a good rapport with Dr. Martin and her staff, as well with Office of Accessibility Ms. Kelly Kulick.

18. Plaintiff had played the Bassoon for 18 years from 8th Grade thru College and while being escorted by Oldfield to the University of Akron Counseling Center, Plaintiff dropped of text books in his Bassoon locker in the music building. Oldfield demanded to inspect Plaintiff's locker and Bassoon case that merely contained a Bassoon rented from UA Music Department. UA police then placed Plaintiff into custody and took Plaintiff to the Cleveland Clinic, Akron Campus, for psychiatric evaluation. The psychiatrists at Cleveland Clinic examined Plaintiff, diagnosed anxiety, opined that Plaintiff did not have a "mental illness subject to a court order" under Ohio involuntary commitment laws, and released him immediately, about 3:00 a.m. November 7, 2017.

19. Because of this wrongful seizure of his person and invasion of privacy, Plaintiff was extremely stressed, due to false allegation he was 'suicidal' and his anxiety disability was so aggravated that he could was medically unable to attend Oldfield's LARW I 8:30 a.m. class, on November 7, 2017. That morning Oldfield "coincidentally" gave a "Quiz" (the only one for the entire semester) and refused to allow Plaintiff to "make up the grade" with another "Quiz", even though Cleveland Clinic had cleared Plaintiff as far as purported "mental illness" and need for hospitalization, yet Oldfield glaringly prohibited Plaintiff from taking a make-up test that is permitted for students without a

8

mental health disability. Plaintiff received a zero for the "Quiz" and received an overall poor grade because of this grade as reasonable accommodation, due to Oldfield's intentional act of falsely deeming Plaintiff was 'suicidal'.

20. On November 9, 2017, Oldfield issued a memo copied to eight UA officials including the President of UA, and Dean Peters, directing all communications to UA to be to Oldfield, Plaintiff's abuser. Plaintiff had no resource to shield him from Oldfield's dominion, control and abuse.

21. In March 2018, Plaintiff filed a complaint with the United States Department of Education Office for Civil Rights (OCR) alleging discrimination based upon age and disability.

22. On August 13, 2018, the OCR complaint allegations were evaluated through a mediation facilitated by the Federal Mediation & Conciliation Service (FMCS), several senior UA Attorneys with Office of General Counsel, an Ohio Deputy Attorney General representative, and Oldfield . The mediator Barbara Baker wrongfully suggested Plaintiff drop the OCR charges and not proceed with a formal investigation because of stress of an investigation. She recommended to put the matter 'behind him' and go forward. Due to this pressure, Plaintiff desired to avoid additional stress and decided to drop the charges even though the mediation had not resolved or addressed any of Plaintiff's serious concerns.

23. On August 17, 2018, Defendant Oldfield engaged in further acts of harassment toward Plaintiff. Dean Oldfield suddenly approached Plaintiff and Oldfield **threatened** Plaintiff that he, Oldfield **"was going to fuck his crazy ass,"** as plaintiff was walking down the

stairway from the Law Library after working on final drafts for final projects in Grants

Writing and Leadership, Summer Semester courses in the MPA program, as Plaintiff

was in the Joint JD / MPA program, and received "A's" in both classes. Plaintiff became

extremely frightened and needed to finish the term report projects in the MPA courses,

within a tight timeframe. Plaintiff is disabled, and Oldfield knew it as Oldfield received

a document from Office of Accessibilities for additional time on assignments. Plaintiff

also was previously diagnosed with coronary Artery Disease, and with an Abdominal

Aortic Aneurysm ("AAA") in April 2018 and suffers severe anxiety as known by UA,

as diagnosed by a Social Security psychiatrist.

24. On August 17, 2018 Plaintiff became very stressed and horrifically fearful of Oldfield

for a second time, after the November 6, 2017 episode and the November 9, 2017

Oldfield memo limiting Plaintiff's contact except through Oldfield, Plaintiff's abuser.

Plaintiff drove back to Boise for a week to relax and escape the hurtful abusive

environment created by Oldfield.

25. On August 28, 2018 the day after returning from Boise, at the start of Fall 2018 Law

and MPA classes, Plaintiff made an appointment for August 29, 2018 at ~ 12:00 p.m., to

see his SUMMA Primary care Physician, Dr. Armao for help with stress and anxiety at

UA Law School. Circa 9:15 AM on August 29, 2018, Plaintiff emailed the Federal

Mediator Barbara Baker (from August 13th, 15 days earlier, as she told Plaintiff to get in

touch if further questions) to report the harassment and seek help filing a retaliation

complaint against UA. Not obtaining a reply, plaintiff became more frightened and, off-

campus on his way to the appointment with his Primary Care Physician, left a polite

voicemail with M. Baker seeking help to file a Retaliation Complaint, 12 days after Oldfield threatened to "fuck my crazy ass" and noting he was not suicidal (to reiterate again after the phony diagnosis by Oldfield on November 6, 2017) and that it they kept pushing him he would put then on the map, and it would get messy, as Plaintiff was sick and tired of being abused and harassed by Oldfield who, thru November 9, 2017 "memo" to all key University and UA Law key personnel sought full Dominion and Control over Plaintiff's ability to seek intervention from abuse from Plaintiff's chief abuser, Dean Oldfield, himself. The email circa 9:15 AM on August 29, 2018 is as follows, and although Plaintiff sought help, Federal Mediator Barbara Baker has never responded to, and concealed from all parties this email, yet the voice mail about  hours later was deemed 'suicidal' (once again – a "one trick pony" by (not surprisingly) Dean Oldfield.

26. **Clark Robertson** <geofyzx@yahoo.com>

    To: Baker Barbara

    Wed, Aug 29, 2018 at 9:15 AM

    Hi Barbara;

    We need to have a discussion.  I believe the Law School is retaliating against me. Chris Crull (pronounced cruel) gave me a 50% on a Legal Analysis that destroyed all my work done to date.  All my prior assignments received decent points and I had ~86% until the 50% score. They are out to get me.  I wish to file retaliation.  I really hate the way I have been abused by this school.

    Clark

27. Plaintiff merely sought to exercise his Federal rights, due to abuse from Oldfield to petition the government under the U.S. Constitution First Amendment.  The right to petition government for redress of grievances is the right to make a complaint to, or seek the assistance of, one's government, without fear of punishment or reprisals.

    So, how does one petition the government?

**File a lawsuit; Submit a complaint to a government agency; Contact a government official;** Circulate a ballot initiative or referendum for others to sign.

28. In the context of a retaliation charge, Plaintiff commented in a calm and polite voice, during his Voicemail conversation that he wants to take "legal retaliation toward the school because they are discriminating [because of] my age and it is not right." Plaintiff stated that he "did not want to commit suicide" and was very distraught after suffering Oldfield's prior abusive act, on November 6, 2017 as well as the August 17, 2018 threat that Oldfield was "going to Fuck his Crazy Ass". Plaintiff suffering from significant anxiety stated that if they "want to push [him] to the edge … [he] will put them on the map … it will absolutely be a nasty mess." Plaintiff meant that he would take legal action, and the message was short, in a quiet and calm voice, and Plaintiff politely in a quiet tone of voice, made the voicemail call, clearly and politely identifying himself, while off campus just before leaving to meet with Plaintiff's primary care physician, Dr. Armao, M.D. in Fairlawn, OH for the 12:00 p.m. appointment, for help in managing stress caused by Oldfield. Plaintiff did not intend to commit suicide or harm anyone. Plaintiff was suffering anxiety and frightfully tired of being abused by Oldfield, who had isolated Plaintiff to the extent of being Plaintiff's sole contact on campus (on

November 9, 2017), except Dr. Martin, Ph.D. psychologist (who was aware of

Plaintiff's anxiety, and Ruled Out, suicide in her Summary Report). Plaintiff fully

believes Defendant Oldfield and UA Law School should be "put on the map" and it will

as result of litigation be "messy" as Oldfield and the UA Law School went beyond the

pale in a "cover up" to push Plaintiff to the edge. [1]

29. Barbara Baker forwarded the voice mail (yet disregarded receipt of the above in #26.

email and blatantly failed to ever answer it) to her Regional Director Carolyn Brommer,

who contacted the Akron School of Law personnel and forwarded the recording of the

conversation to them.

30. At about 12 PM on August 29, 2018, Plaintiff per the appointment made on August 28,

2018, consulted with his SUMMA primary care physician Armao M.D., in Fairlawn,

OH about the stress caused by the law school's discriminatory and abusive treatment of

him due disability, and retaliation for filing a complaint with OCR in March 2018. After

---

[1] Definition **Put on the map**? … to make (a place, a person, etc.) famous or well-known, e.g., The story has *put* our little town *on the map*. https://www.merriam-webster.com/dictionary/put%20(something%20or%20someone)%20on%20the%20map
To make some place or thing very famous or renowned; to establish some place as being remarkable or noteworthy. https://idioms.thefreedictionary.com/put+something+on+the+map
Definition - Would get messy – Get into a mess:
1. Literally, to become dirty or soiled.*Boys, if you're going to the park, please don't get into a mess!*
2. To become involved in a troublesome situation. https://idioms.thefreedictionary.com/get+into+a+mess
Messy:
a. Disorderly and dirty: *a messy bedroom.*
b. Given to making messes; not neat or organized: *a messy roommate.*
c. Exhibiting or demonstrating carelessness: *messy reasoning.*
d. Unpleasantly difficult to settle or resolve: *a messy court case.* https://www.thefreedictionary.com/messy
Messy – untidy: *His bedroom's always messy.* https://dictionary.cambridge.org/dictionary/english/messy?
Definition for cover up:
iii. verb To conceal the evidence of one's (usually nefarious) actions. A noun or pronoun can be used between cover" and "up." *I just know that the CEO [Law Dean] is covering something up—*
*why else would those documents suddenly go missing?The administration [Law*
*School] is clearly trying to cover up the scandal.*
iv. noun The act of concealing the evidence of nefarious actions. *https://idioms.thefreedictionary.com/cover-up*

an interview with Plaintiff, Dr. Armao stated in his Medical records that Plaintiff was not suicidal and had no intent to harm others. Dr. Armao diagnosed Plaintiff with generalized anxiety disorder and moderate depression. Dr. Armao arranged for an appointment with a Psychiatrist, at the earliest available time in October 2018, to get additional help to manage stress. Plaintiff then decided to drop many of his Law classes, while driving back to Akron from Fairlawn, in Plaintiff's BMW, to reduce stress of Oldfield, while pursuing a retaliation complaint against UA Law School. Plaintiff then met with Ms. Darlene Buzza to take additional MPA classes in his joint JD/MPA program, and sought to reduce his law classes.

31. Per an email from Office of Accessibility, Ms. Kulick, on August 1, 2018, Plaintiff then met with Misty Franklin, registrar with UA Law School. Due to the stressful and vicious chain of events since November 6, 2017 and especially after Dean Oldfield threatened to "Fuck his crazy ass" on August 17, 2018, 4 days after the mediation with the Feds, Plaintiff was terrified of Oldfield and concealed a Digital Audio Recorder on a lanyard around his neck under his shirt, as Ohio is a "one party consent" State.

32. After listening to the tape, Defendant Law Deans Oldfield had contacted Defendant UA Police Department at some time prior to 3:00 pm on August 29, 2018 to request that it send officers to the School of Law to apparently take Plaintiff into custody, while Plaintiff was lucidly, politely, and professionally negotiating a new Law class schedule with Misty, while Dean Janoski was present. The entire conversation was digitally recorded, and lasted about 10 minutes. Plaintiff had not seen Dean Peters since about

March 2018, in passing through the hallway. Plaintiff had not seen Oldfield since August 17, 2018 when Oldfield threatened to "Fuck his crazy ass".

33. As Plaintiff can be heard politely and professionally discussing Law class schedule changes with Misty (Dean Janoski had quietly left – only Misty and Plaintiff were in Misty's office, calmly discussing Law class schedules)  noting events that were stressful leading to the changes and additional classes added in MPA program, a UA Police Officer barged in and said in a loud voice "Mr. Robertson".

34. Oldfield and /or Peters had called the UA Police as a "SWAT" [2] weapon premised on fabrications, ruses, and distortions of being (as stated on the Incident Report ("Police Report") **"Emotionally Disturbed"** or **"Irate"**. Yet listening to Plaintiff's recording, (and reading the transcript) for over 10 minutes prior to arrival of UA Police, Plaintiff was absolutely NOT "Emotionally Disturbed **or** Irate." At that time, Plaintiff was merely meeting with law school personnel per an August 1, 2018 email from Ms. Kelly Kulick, Office of Accessibility to ensure this accommodations and other relevant

---

[2] **Swatting** [https://en.wikipedia.org/wiki/Swatting] is a criminal harassment of deceiving an emergency service (via such means as hoaxing an emergency services dispatcher) into sending a police and emergency service response team to another person's address. This is triggered by false reporting of a serious law enforcement emergency, such as a bomb threat, murder, hostage situation, or a false report of a **"mental health"** emergency, **such as reporting that a person is allegedly suicidal or homicidal and may or may not be armed.** *Healy, Patrick. "Online Gamer Sentenced in Ventura County "Swatting" Hoax". NBC Los Angeles. Archived from the original on July 4, 2015. Retrieved July 3, 2015. "Serial 'swatter' sentenced to 20 years for death of Kansas man shot by police". NBC News. Retrieved July 15, 2019.*

The term Swatting derives from the law enforcement unit "SWAT" (*special weapons and tactics*), a specialized type of police unit in many countries. A threat may result in the evacuations of schools and businesses. Advocates have called for swatting to be described as terrorism (*Enzweiler, Matthew James (2015). "Swatting Political Discourse: A Domestic Terrorism Threat". Notre Dame L. Rev. 90. Archived from the original on September 11, 2015. Retrieved January 14, 2018.*), due to its use to intimidate and create the risk of injury or death Solon, Olivia; Zadrozny, Brandy (December 22, 2019). "Trolls turned 911 into a weapon. Now cops are fighting back - Once viewed as a prank, police are now treating 'swatting' as a serious crime that wastes city resources and puts targets' lives at risk". *NBCNews.* Archived from the original on December 23, 2019. Retrieved December 22, 2019.

details, as a disabled person, were in order for the fall 2018 class schedule, and request

that Plaintiff be permitted to drop many of his Law classes, in order to take more MPA

classes (in Joint JD / MPA program) that Plaintiff had politely registered for with the

MPA registrar, Ms. Darlene Buzza, about ½ hour earlier, because the law school

environment with its abusive, discriminatory and retaliatory treatment of him was too

stressful. Plaintiff recorded every word of the various conversations that took place in

Misty Franklin's office, while negotiating a new law class schedule so as to not conflict

with MPA classes that Plaintiff had registered for about 20 minutes earlier.

35. Plaintiff was politely and professionally engaging Misty Franklin in modifying Law

classes, when Dean Janoski Haehlen quietly entered through a side door, and smiled.

The only persons present behind closed doors with Plaintiff were Misty, and Dean

Janoski Haehlen. No other Law School officials were present in Misty's office. Plaintiff

continued negotiating the Law class schedule noting he had just met with MPA registrar,

Darlene Buzza and was taking more MPA classes due to concerns with stress at the Law

School. Plaintiff was absolutely NOT "irate" as falsely alleged in the Police Report.

Besides Misty Franklin and Dean Janoski-Haehlen, In listening to the digital

conversation (and reading the Court Reporter certified transcript), it is clear everything

is lucid, polite, and professional. Misty, Emily, and Plaintiff are cordial, friendly, chatty,

and professional, discussing fewer law class offerings that did not conflict with MPA

classes. Neither Dean Oldfield nor Peters were present and Plaintiff did not see either

Oldfield or Peters that day. Plaintiff had not seen Peters since circa March 2018. The last

time Plaintiff saw Oldfield was on August 17, 2018 when Oldfield threatened plaintiff.

Plaintiff took great pains to avoid Oldfield. Yet, Oldfield and Peters were egregiously and FALSELY listed as witnesses to present a false light of credibility. Apparently, vicious lies and ugly allegations on the "Incident Report" were contrived by others not present, and the UA Police sadistically fabricated events that did not happen, printed words not spoken, and made disgustingly deceitful comments not grounded in truth, as evidenced in Plaintiff's Digital Audio and court certified transcript thereof.

36. Plaintiff's recordings as transcribed by a certified court reporter prove in detail the "Incident Report of the University of Akron Police Dept" Report 18-019842 is not only full of inaccuracies, but is in fact an evil, hateful, and vicious criminal Hoax. While it is certainly true on the "Incident Report" that Plaintiff is the Victim No. 1, the breadth and depth of false statements and distortions are clearly and sadly documented with Plaintiff's digital audio and transcript thereof.

37. Offense No.1 is also a blatant lie as Plaintiff was not an Emotionally Disturbed Person, (an evil conflation with Plaintiff's status as a disabled person) and audio and transcript clearly prove this. Further, the allegation that Plaintiff was "Irate" is another vicious lie. Plaintiff was quiet, polite, professional and lucid.

38. Ancillary Person No. 1 (Oldfield) and Ancillary Person No. 2 (Peters) were NOT present, and were NOT witnesses (more lies) in Misty Franklin's office, and the office doors were closed. It is unclear who alleged Plaintiff was "Irate" another evil conflation along with Plaintiff's false portrayal as an Emotionally Disturbed Person, as regard polite and professional conversations between Dean Janoski-Haehlen, Misty Franklin and Plaintiff, regarding Fall Semester 2018 Law class schedules.

39. Officer Gedeon suddenly snuck up behind Plaintiff, then stated in a loud voice, "Mr. Robertson." Plaintiff jumped in his chair a little bit in sudden surprise, as Plaintiff was focused on arranging his class schedule. Misty then quickly left through the side door toward Dean Peter's Office, leaving Plaintiff with the UA Police officer, who was rude, insincere and combative from the outset. Again, the entire conversations between Misty, Emily and UA Police Officers was duly recorded and faithfully transcribed by a Certified Court Reporter. The Defendant Police officer interrogated Plaintiff. Plaintiff explained that the "nasty mess" and "putting them on the map" statements were only referencing legal proceedings to file a retaliation complaint. Plaintiff emphasized that he did not even own a gun and was not armed with any weapon.

40. Plaintiff calmly and politely emphasized that he was not suicidal or homicidal, that he was not a violent person, did not own any guns or weapons, but merely sought to file a Federal Retaliation complaint against UA Law School. Plaintiff politely directed the officers to contact his physician Joseph Armao M.D., whom he had seen merely three hours earlier that day, to discuss his current mental condition. However, the Defendant officer absolutely refused to do so.

41. Thereafter, Defendant UA Law Deans Oldfield, Peters, and Janoski-Haehlen, in another nearby office, allegedly directed the police officer to listen to the two minute Voice Mail (but not the email sent at 9:15 AM that same day) forwarded by Barbara Baker's Supervisor Ms. Brommer. The Police Officer spent 5-7 minutes in Dean Peter's Office with Dean Oldfield, Janoski, and Misty. Based upon unknown conversations with these Defendants, the officer with no medical or mental health certified training "pink-

18

slipped" Plaintiff on an emergency basis and unlawfully placed Plaintiff in custody. The

Defendant officers had no authority to place Plaintiff in custody because under the

circumstances and the context of his statements, he was not a "danger to himself or

others." Defendant university personnel had no statutory authority or qualifications to

assess whether Plaintiff was a danger to himself and others. In fact the UA

Psychologist, Dr. Martin, whom Plaintiff met with on a number of instances to resolve

anxiety, "ruled out Suicide" in her official report. Although this was not a criminal

proceeding, because of the mandatory detention and deprivation of liberty interests,

Plaintiff was placed in custody without a warning regarding his right to remain silent

during the involuntary commitment proceedings. Plaintiff was unlawfully removed

from the UA School of Law, and ingloriously placed into police custody in full view of

his law school peers and its faculty.

42. In blatant disregard to immediately transport Plaintiff to a Hospital, as clearly evidenced

on the Digital Audio, in less than ¼ mile,on the way to Summa Health Akron

Emergency Department, Officer Wayner stopped at the University of Akron Police

Department for one half hour. He left Plaintiff in the police car with all windows closed

while the outside temperature was above 90 degrees. The car became so hot that

Plaintiff became very distraught and dehydrated to the extent of suffering kidney

damage. Older individuals are more susceptible to having health issues from heat

exposure. When Plaintiff arrived at the Emergency Department at the hospital, he was

diagnosed with insufficient creatine, with significant physical injury to kidneys. Upon

arrival to the Hospital Plaintiff could barely walk and after a blood sample was

19

analyzed, Plaintiff was immediately admitted to Summa Health Hospital-Akron

Campus and placed on a drip for twenty-two hours, in the presence of a "suicide watch

assistant, based upon false allegations of UA Police and Law Deans.

43. On August 30, 2018, the Akron City Hospital Emergency Department conducted an

unwanted and unmerited involuntary psychiatric assessment of Plaintiff, while

traumatized in intense fear after being "cooked" in the Hot UA Police SUV for ½ hour.

Plaintiff was lying in bed with intravenous solutions and medication in his left arm, and

not able to compose himself, due to harm suffered by abuse from UA Police and UA

Law Deans. The Hospital and the State of Ohio violated his Fifth Amendment Rights by

forcing him to speak and depriving him liberty rights by the involuntary commitment.

Plaintiff calmly stated he merely sought to change his Law classes to avoid stress

caused by the Law School, and file a retaliation Complaint after abuse following the

OCR Civil Rights complaint. Plaintiff stated he had never been suicidal and only

wanted to take fewer Law classes to avoid stress, and file a Retaliation Complaint. The

hospital Doctor instead stated that Plaintiff threatened suicide, which Plaintiff denied.

44. Thereafter, on August 30, 2018, the Hospital "pink-slipped" Plaintiff while on saline

drip from physical injury to Plaintiff's kidneys due to Hot SUV "Eighth Amendment

Cruel and Unusual Punishment, in a further retaliation against Plaintiff by UA Police.

UA Police that knew as evidenced in Digital Audio and transcripts that Plaintiff wished

to file a retaliation complain against UA and that Plaintiff suffered from AAA and heart

disease and the fake "suicide" diagnosis was the second instance in which UA falsely

punished and abused Plaintiff (following the retaliatory "diagnosis by the UA Police

while in the presence of Deans Oldfield, Peters, and Janoski –Haehlen) Plaintiff was then transferred him over his objection by ambulance at a cost of $900 to Summa Health -St. Thomas Campus, a psychiatric hospital. The hospital had Plaintiff sign a voluntary admission form pursuant to Ohio law which declares him a voluntary patient until a court order is issued finding that he is a "mentally ill person subject to a court order." The Hospital did not inform Plaintiff of his rights or that he is entitled to a hearing with counsel. The first doctor who met with Plaintiff told him that he would be dismissed within a several days as the law provides.

45. Summa Health Systems, which owns and operates St. Thomas Hospital, was in unlawful communication with unknown UA officials in violation of HIPAA falsely stated Plaintiff was a danger to UA Law School and requested Plaintiff not be released based according to Dr. Gspandl. Plaintiff had no resources to contact or obtain outside help, except by chance circa September 15 contact with the VA hotline with limited phone access for the numerous patients, in a public announcement on TV in order to be released, and was held for 18 days despite Plaintiff's multiple requests to leave, due to the flow of UA fabrications that Plaintiff was a danger to the law School.

46. Despite being told by his Doctor that he could not be released due to concerns raised by UA in conversations with UA, the Veteran's Administration Hotline intervened. The VA sent Plaintiff documents necessary for transfer to VA outpatient care. During his wrongful commitment, Plaintiff called many government agencies, including his Congressmen, to seek help in getting discharged from the hospital.

21

47. Plaintiff initially refused to take antipsychotic medication, as he was told that by Dr. Scavelli that voluntary patients were not required to do so. Defendant hospital and Dr. Gspandl, after communication with UA, forced Plaintiff to take anti-psychotic medication, or Plaintiff was warned he would be hospitalized indefinitely. Under duress, because Plaintiff desired to leave the hospital, he took the antipsychotic medication. The probate proceeding was dropped. UA Law School conspired with SUMMA to keep Plaintiff locked up in a psychiatric hospital indefinitely. Yes, Dean Oldfield threatened to "Fuck Plaintiff's Crazy Ass."

48. After being release on September 18, 2018 Plaintiff learned a few days later after recovering composure that, on August 30, 2018, Defendant University of Akron Law School and Peters had advised Plaintiff in writing that he could no longer set foot on Akron University campus. In that letter, Defendant University of Akron Law School and Peters despite all their vicious lies and abuse, tortured in a Hot SUV, and the threat to "Fuck Plaintiff's Crazy Ass" Plaintiff notice of a scheduled hearing about the merits of the disciplinary actions for a Student Conduct violation (what about the horrific acts, abuse, and crimes committed by UA Police and UA Law Deans) and his possible permanent exclusion from the university. Defendants' written materials for students who were given such a hearing stated that such students, including Plaintiff, were merely entitled to bring an "advisor" for "emotional support." The advisor, who could be an attorney, was not permitted to speak or cross-examine witnesses at the hearing.

49. Although Plaintiff had a due process right to legal counsel at the hearing, Defendant law school personnel unlawfully denied the lawyer his right to speak and cross-examination

of Defendants' witnesses. Dean Oldfield (who viciously threatened to "Fuck Plaintiff's

crazy ass" on August 17, 22018  referred where Plaintiff sought help thru First

Amendment redress referred Plaintiff to the Office of Student Conduct, and Mr. Dale

Adams the Office of Student Conduct Director is Digitally Recorded as stating Plaintiff

who sought help from the Federal Government thru First Amendment Redress of

Grievances, that as UA student, Plaintiff had "no First Amendment rights on or off

campus.

50. Plaintiff objected to being denied his right to legal counsel, his right to speak, and his

right to cross-examination of Defendants' vicious retaliatory lies failed to respond to

Plaintiff's objections.

51. As a result of Defendants' denial of procedural and substantive due process, Plaintiff

was mentally unable to withstand more abuse and lies from Oldfield, Peters, and

Janoski-Haehlen as "prosecutors" with a "Jury" of student and faculty hand selected by

Dale Adams, the VA Psychiatrist deemed Plaintiff given the shocking history of abuse

by UA Law School Deans, was unable to withstand the mental stress of a rigged "show

trial" Student Conduct hearing.


## RICO COUNT I

## COUNT I

### Obstruction of Justice 18 U.S.C. § 1503:  Judge Joy Oldfield


52. 18 U.S.C. § 1503 defines "obstruction of justice" as an act that "corruptly or by threats or force,

or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors

23

to influence, obstruct, or impede, the due administration of justice." Within the 10 year look back period,

(A) No person, with purpose to corrupt a public servant or party official, or improperly to influence a public servant or party official with respect to the discharge of the public servant's or party official's duty, whether before or after the public servant or party official is elected, appointed, qualified, employed, summoned, or sworn, shall promise, offer, or give any valuable thing or valuable benefit.

(B) No person, either before or after the person is elected, appointed, qualified, employed, summoned, or sworn as a public servant or party official, shall knowingly solicit or accept for self or another person any valuable thing or valuable benefit to corrupt or improperly influence the person or another public servant or party official with respect to the discharge of the person's or the other public servant's or party official's duty.

(C) No person, with purpose to corrupt a witness or improperly to influence a witness with respect to the witness's testimony in an official proceeding, either before or after the witness is subpoenaed or sworn, shall promise, offer, or give the witness or another person any valuable thing or valuable benefit.

(D) No person, either before or after the person is subpoenaed or sworn as a witness, shall knowingly solicit or accept for self or another person any valuable thing or valuable benefit to corrupt or improperly influence self or another person with respect to testimony given in an official proceeding.

(H) Whoever violates this section is guilty of bribery, a felony of the third degree.

53. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

54. "In February 2012, Oldfield and her husband attended an evening event, plausibly involving a number of members in the Legal Profession that lasted into the next morning. Oldfield's husband asked Catherine Loya, the public defender assigned to the judge's courtroom, to drive Oldfield home, and he left." While one may reflect on Dean Oldfield's "judgment" he knew or should have known significant alcohol was consumed at the event, no doubt involving members of the "legal profession." The benefit here if any, is that is casts light upon activities attributable to Judge Joy and her enterprises.

55. While alcohol was involved, it did not stop here. Judge Joy Oldfield ("Judge Joy") was enjoying a relationship, plausibly for some time prior to the incident in Copley, OH where a Police Officer discovering both Judge Joy and Ms. Loya (translated as Loyal in Spanish language), in a state of undress in the back seat of Ms. Loya's motor vehicle, according to public reports. While unclear, it is plausible as Public Officials and Public Figures they were reflecting an a well-known first year law school case, Hustler Magazine, Inc. v. Falwell, 485 U.S. 46 (1988) ("Hustler") yet as distinguished from the "parody" in "Hustler", as the matter involving, for example, the infamous Jerry Falwell, Jr., of Liberty University, his wife, and the "pool boy" trysts and Judge Joy and the

25

Public defender were not a "Parody." While it did not involve an "Outhouse," sadly, a taxi ride and Motel Room, would have negated this sordid unethical matter seeing the light of day. And it is plausible this was not their "First Campari" together. This begs the question how many "Campari's" did Judge Joy indulge, with whom, their position or title, and under what circumstances.

56. For a significant period of time, Public Defender, unable to drive due to refusing a sobriety test, continued to live with Judge Joy, her husband Dean Oldfield, and children, while Judge Joy drove her to work at the Court of Common Pleas, and held various criminal hearings and trials without disclosing conflict of interest. Over 50 Defendants were represented by Public Defender Loya, while Judge Joy presided without disclosure to anyone else, (except, plausibly Dean Oldfield) much less the Defendants who expected a fair Trial, not an episode involving Obstruction of Justice.

57. These events set in motion this "enterprise" at minimum, by and between Judge Joy, the Public Defender and Dean Oldfield, an experienced Appellate lawyer, who knew or should have known this serious conflict of interest was not disclosed, nor avoided, and remained silent.


## RICO COUNT III. Bribery

## Ohio Revised Code - 2921.02. Bribery.


58. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

59. A) No person, with purpose to corrupt a public servant or party official, or improperly to influence him with respect to the discharge of his duty, whether before or after he is elected, appointed, qualified, employed, summoned, or sworn, shall promise, offer, or give any valuable thing or valuable benefit.

60. Here, Public Defender Loya received a valuable benefit. She was afforded a significant material benefit of secretly living with Judge Joy, her spouse Dean Oldfield and their kids, being receiving rides to and from the Court of Common Pleas (may it Pleas the Court) with Judge Joy presiding over trials with Public Defender representing impoverished Defendants, unaware of their "relationship and the obvious "Quid Pro Quo".

61. This "enterprise" benefitted all parties except the poor defendants that expected a 'fair trial".

62. It is plausibly highly unlikely the relationship with Judge Joy and Public Defender Loya. Given the then recent alcohol impacted events afforded Defendants a fair trial.

63. Dean Oldfield, an experienced Appellate lawyer, who knew or should have known this serious conflict of interest was not disclosed, nor avoided, and yet remained silent.


**RICO COUNT IV**

**Obstruction of Justice 18 U.S.C. § 1503: Dean Oldfield**

64. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

65. On the face of the University of Akron Police Dept (at least they were not at the beck and call of the Law School, right?) Incident Report ("UA Police Report") the "Incident" at the very top of the page was from 3:44 PM thru 4:25 PM.

66. One of the few truths appears at third line down where Plaintiff is listed as Victim No.1

67. The last full line under Victim is the box "Injured" and a "No" is observed, as in **not yet**, as Plaintiff had not been placed in the Hot UA Police SUV and "cooked".

68. The Offense No. 1 states "Emotionally Disturbed Person." No mention is made who alleged this, or any truthful facts to support this conclusory derogatory remark, as it is a medical diagnosis. Importantly, anyone listening to Plaintiff's digital Audio recording (Ohio is a one party consent State) and reading the transcript would understand Plaintiff was at all times lucid, polite, and professional and not "Emotionally Disturbed Person."

69. Next the Police Report stated Victim (Plaintiff) was "Irate." Not facts are set forth to support this vapid musing. Anyone listening to the recording and reading the transcript would understand Plaintiff was not "Irate."

70. Plaintiff was stressed from having been told on August 17, 2018, 4 days after a Federal Mediation of August 13, 2018 that Dean Oldfield Threatened he was going to "Fuck Plaintiff's Ass." Plaintiff emailed Barbara Baker at 9:15 AM who told Plaintiff to contact her if any questions arose. Plaintiff received no response from Ms. Baker, and was frustrated with the ongoing abuse, harassment and then as a final straw, the Threat to "Fuck his Crazy Ass" led to the voicemail to Barbara Baker due to the abuse and severe anxiety that Plaintiff suffered from, as result of Dean Oldfield's unwelcome, hostile, abuse that initially led to the U.S. Department of Education Office of Civil

Rights (OCR) Complaint. Plaintiff in stating he was not suicidal stemmed from the earlier false allegation by Oldfield on November 6, 2017 when Plaintiff sought reasonable accommodation and was forced to either drop two semesters or get evaluated as Oldfield vindictively asserted Plaintiff was "suicidal" with no factual basis, then the two Cleveland Clinic Psychiatrists quickly released Plaintiff following a 30 minute evaluation, at about 3:30 AM and Oldfield refused to allow Plaintiff to take a make-up Quiz despite creating the problem by falsely alleging Plaintiff was "suicidal."

71. Plaintiff quietly and succinctly stated he sought help filing a Federal retaliation complaint (First Amendment fight to redress) and was going to put the Law School "on the map" and it would get nasty, as Plaintiff was a former Federal Investigator, with recent completion of Pre-Med classes (3.5 GPA) and sick and tired of Oldfield's escalating abuse, bullying, and then on August the Threat to "Fuck his Crazy Ass."

72. After his Doctor's appointment made on August 28, 2018, where SUMMA Dr. Armao felt plaintiff was stressed and had mild anxiety, Dr. Armao felt a Psychiatrist may be helpful and made a non-urgent appointment in October 2018. Plaintiff then decided the best outcome was taking more MPA classes and fewer Law classes to avoid Oldfield.

73. Mindful of Ms. Kulick's (Office of Accessibility) email with to meet with Misty Franklin, the Law School registrar regarding Disability Accommodations, Plaintiff went to Misty's office about 20 minutes after adding more MPA classes with Ms. Darlene Buzza. Due to Oldfield's recent vicious Threat on August 17, 2018, and the environment immediately after the Federal Mediation, Plaintiff Digitally recorded everything.

74. The meeting with Misty was polite and professional. Deans Oldfield nor Peters were present. Plaintiff had not seen Oldfield since the Threat to "Fuck his crazy ass' on August 17, 2018, and it was since March Plaintiff last saw Dean Peters in a hallway, passing by.

75. Dean Janoski entered Misty's office while Plaintiff discussed taking fewer classes due to stress. All conversations were polite, lucid and professional as evidenced by Digital Audio and Transcript. Janoski then abruptly left Misty's office, while Misty and Plaintiff continued to arrange Law classes that did not conflict with MPA classes, in a quiet, polite manner.

76. Next a UA Police officer suddenly startled Plaintiff from behind, as Misty left her office. The Police officer was rude and quickly his conversation focused (once again as with Oldfield on November 6, 2017 that Plaintiff was 'suicidal'.

77. The UA Police officer went to Dean Peter's Office where Plaintiff believes Oldfield, Peters, Janoski, and Misty were located. He wanted to merely listen to the transcript but was gone for about 5 minutes, ad his supervisor, a Lt. Hough sat with me. The officer, a subordinate, returned from Peter's office and "diagnosed" (he was hardly a medical professional) as being suicidal and promised to take Plaintiff immediately to the Hospital. Plaintiff denied he was suicidal, yet UA Police Refused to speak to Plaintiff's Medical Doctor from 3 hours earlier. Plaintiff also disclosed he was disabled, and suffered from Heart Disease, had no desire to hurt himself or others and had no weapons.

78. Instead of taking Plaintiff immediately to the Hospital, Plaintiff was sadistically abandoned alone and tortured for ½ hour in a Hot SUV with engine off and windows rolled up in 90 degree heat on August 29, 2018 circa 4 PM. Plaintiff believes UA Police conspired with Law Deans to "Cook" Plaintiff to further retaliate against Plaintiff's effort to once again involve the Federal Government, this time for Retaliation 16 days after the Federal mediation, and 12 days after Oldfield Threatened to "Fuck Plaintiff's Crazy Ass." Oldfield enforced his threat.

79. The Police Report is replete with twisted distortions and lies. Neither Oldfield nor Peters were present and were not "witnesses" in any stretch of the imagination and any information stated by them is fanciful hearsay.

80. Misty is listed as a "witness" yet her vicious lies are negated by Digital Audio and the transcript.

81. Dean Janoski as a "witness" for the first  minutes of the conversation to modify Plaintiff's Law classes and knew or should have known Plaintiff was not "Irate" nor an "Emotionally Disturbed Person." Yet Dean Janoski failed to object to the lies, and speculative fabrications presented as righteous truth by Peters, Oldfield and the UA Police, as Plaintiff believes Oldfield, Peters, Janoski, Misty and the UA Police, as evidenced by truth in the Digital Audio and transcript conspired to fabricate a false Police Report in order to get Plaintiff cooked in a Hot UA Police SUV and thrown in a Mental Hospital due to their Power, Authority and vicious evil criminal acts to deliberately harm and cause Plaintiff to suffer mental anguish.

# RICO COUNT V

**Title 18, U.S.C., Section 249 – Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act**

This statute makes it unlawful to willfully cause bodily injury—or attempting to do so with fire, firearm, or other dangerous weapon—when 1) the crime was committed because of the actual or perceived race, color, religion, national origin of any person, or 2) the crime was committed because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or **disability** of any person and the crime affected interstate or foreign commerce or occurred within federal special maritime and territorial jurisdiction

82. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

83. Plaintiff had disclosed a disability known by UA Law School and the University.

84. Plaintiff was a Victim, as cogently stated on the face of the UA Police Report.

85. Plaintiff was abandoned and physically tortured in a Hot UA Police SUV.

86. Plaintiff's kidneys were physically injured as evidenced by relevant medical records.

# RICO COUNT VI

## Title 18, U.S.C., Section 241 – Conspiracy Against Rights

This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same).

87. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

88. Plaintiff merely wanted to file a Retaliation Complaint and sought Redress for Grievance under the First Amendment of the U.S. Constitution.

89. Plaintiff also peacefully, calmly and politely sought to take fewer Law classes after increasing MPA classes as part of Plaintiff's joint JD/MPA program.

90. Oldfield, Peters, Janoski, Misty and UA Police conspired to fabricate false information under teir power and authority to unlawfully confine Plaintiff in a mental hospital.

**RICO Count IV**

**Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law**

91. This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the Acts under "color of any law" include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of his/her official duties. This definition includes, in addition to law enforcement officials, individuals such as Mayors, Council persons, Judges, Nursing Home Proprietors, Security Guards, etc., persons who are bound by laws, statutes ordinances, or Punishment varies from a fine or imprisonment of up to one year, or both, and if bodily injury results (18 U.S. Code § 2266 – Definitions In this chapter:

(1)BODILY INJURY.—
The term "bodily injury" means any act, except one done in self-defense, that results in physical injury or sexual abuse. (18 USC § 2266(1))

(2)COURSE OF CONDUCT.—
The term "course of conduct" means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose.)
customs.

92. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully rewritten.

93. Plaintiff sought First amendment Redress of Grievances with a Federal Agency

94. UA Law Schol deans fabricated lies and vicious scurrilous allegation with an eye toward depriving Plaintiff of his freedom and unlawfully ban Plaintiff from UA School of Law through vapid contrivances, to further retaliate against Plaintiff, honoring Oldfield's threat to "Fuck his Crazy Ass."

95. Plaintiff suffered substantial financial harm and horrific mental anguish leaving Plaintiff with recurring nightmares of being persecuted and framed.

96. As a 32nd Degree Master; Oh Lord, my God, is there no help for the Widow's son?


**Plaintiff demands judgment as follows:**

A. Award Plaintiff actual damages;

B. Award Plaintiff compensatory damages and damages for emotional distress;

C. Award Plaintiff punitive damages against Defendants as appropriate, in an amount to be established at trial;

D. Award Plaintiff reasonable attorney fees and costs pursuant to 42 U.S.C §1988 and any other applicable law;

E. Award Plaintiff prejudgment interest and post judgement interest;

F. Grant injunctive relief to cure all constitutional deprivations caused by Defendants and to require Defendants to cease such constitutional deprivations in the future;

G. Award Plaintiff any other and additional relief to which Plaintiff is entitled by law or equity and to which the Court deems proper.

/s Clark A. Robertson

3527 S. Federal Way, 103-15

Boise, ID 83705