IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLARK A. ROBERTSON, | ) | CASE NO. 5:22 CV 1652 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| EMILY JANOSKI-HAEHLEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Clark A. Robertson filed this action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, as well as 18 U.S.C. §§ 241, 242, 249 against University of Akron ("UA") Law School Dean Emily Janoski-Haehlen, former UA Law School Dean Christopher J. Peters, UA Law School Assistant Dean Charles Oldfield, University of Akron ("UA") President Gary L. Miller, UA Police Chief Dale Gooding, Jr., former UA Police Officer James P. Weber, UA Police Officer Todd R. Hough, UA Police Officer Thomas A. Gideon, UA Police Officer Thomas Wayner and the UA Law School. In the Complaint, Plaintiff alleges the Defendants exacerbated his anxiety disorder and caused him undue stress by having him removed from campus for psychiatric evaluation on two occasions. He asserts causes of action under RICO and criminal statutes pertaining to conspiracy to violate civil rights. He seeks unspecified monetary damages and injunctive relief.

## Factual and Procedural Background

Plaintiff indicates that he is a 71-year old veteran living in Boise Idaho. He contends he was awarded an MBA, an LLM in taxation, and a JD from San Francisco Law School. He alleges he suffers from severe anxiety for which was awarded Social Security Disability. He states that he was provided with additional time to take the LSAT and was allowed additional time to take exams by the University of Akron Office of Accessability.

Plaintiff began to attend classes in the JD/MBA program at the University of Akron in January 2017. He alleges that on November 6, 2017, he asked Oldfield to permit him to turn in a research and writing class assignment on or before 11:59 p.m. as was the custom in other classes. Plaintiff does not provide the details of that conversation but he contends that Oldfield determined from that conversation that Plaintiff was suicidal. Plaintiff claims Oldfield required him to walk to the UA counseling office for an evaluation. Plaintiff states he wanted to stop on the way to get something out of his locker in the music department; however, Oldfield objected and insisted on searching the locker before allowing Plaintiff to access it. Plaintiff contends the UA police were summoned and took him to a Cleveland Clinic hospital for a psychiatric evaluation. Plaintiff states that the physicians evaluating him released him later that same day.

Plaintiff states that he was very anxious after his release and declined to attend classes the following day. He alleges that Oldfield gave a quiz in class and would not allow Plaintiff to make up the quiz which significantly lowered his grade and caused him more anxiety. Plaintiff also contends that on November 9, 2017, Oldfield sent a communication throughout the University asking that all communication about Plaintiff be sent to him. He claims that after

Oldfield had him removed for a psychiatric evaluation, he became stressed and afraid that he would be removed again.

In March 2018, Plaintiff filed a complaint with the United States Department of Education Office for Civil Rights ("OCR") claiming the University discriminated against him on the basis of age and disability. He indicates that on August 13, 2018, the OCR scheduled a mediation with UA attorneys, the Office of the General Counsel, an attorney from the Ohio Attorney General's Office, Oldfield, and Plaintiff. Barbara Baker was the mediator. Plaintiff alleges that Baker advised him to drop the complaint as the process itself could place added stress on Plaintiff. She suggested he put the November incident with Oldfield behind him. Plaintiff claims that four days after this mediation, Oldfield approached Plaintiff and told him he would "f*** his crazy ass." (Doc. No. 1 at 10). Plaintiff contends he was already stressed because he needed to finish reports and projects on a tight deadline to complete the summer semester and Oldfield's comment added to his anxiety. He states he decided to drive back to Idaho for a week to relax and get away from Oldfield.

Plaintiff returned to UA on August 28, 2018 to start fall classes. He indicates he made an appointment with his physician for the morning of August 29, 2018 to discuss his stress and anxiety levels. He also sent an email to Baker informing her of the latest incident with Oldfield and asking for help to file another complaint against UA. He states she did not respond and he became more anxious and frightened. He contends that on his way to his appointment with his physician, he left a polite voice mail for Baker asking for help with a second retaliation claim. He states that he received a 50% on his legal analysis from Professor Crull which he believed to be in retaliation for filing the first complaint. In that voice mail, he stated, "if they (UA) wanted

-3-

to push him to the edge, he would put them on the map ...[and] it will absolutely be a nasty mess." (Doc. No. 1 at 13). He indicates that he was referring to taking legal action.

Baker did not interpret Plaintiff's statement as a threat to pursue legal action. Instead, she forwarded the voice mail to her Regional Director who in turn contacted the UA Law School. Oldfield listened to the voice mail and contacted the UA Police Department. In the afternoon on August 29, 2018, Plaintiff was in the University Registrar's Office attempting to drop law classes and add MBA classes to his fall schedule. Plaintiff alleges that the UA Law School Registrar's office is in close proximity to the Dean's Office. He states that Janoski-Haehlen was also present when he was trying to change his schedule, but quietly left the room. Plaintiff alleges he then heard a UA police officer call his name. Officer Gideon came into the room and confronted Plaintiff. Plaintiff states that Gideon was rude and combative while Plaintiff remained calm. Plaintiff explained to Gideon that his voice mail referred to legal action he intended to take against the University. Gideon then went into the Dean's office and spoke to Oldfield, Peters, and Janoski-Haehlen. Based on this conversation, the Officers indicated to Plaintiff that they were taking him in for an involuntary psychiatric evaluation. Plaintiff claims the officers escorted him out of the building. He indicates that they left him in a hot car in 90 degree temperatures for an extended period of time causing him to suffer from kidney damage. Plaintiff was hospitalized in the psychiatric unit until his release on September 18, 2018. Upon his release, he discovered that he had been banned from the UA campus.

Plaintiff's legal claims are not well defined. He lists Counts I through VI, but skips Count II. Counts I and III are asserted against Judge Joy Oldfield, who is not a Defendant in this action, concerning events from 2012 that do not concern Plaintiff and which occurred well before

Plaintiff started law school at UA. Count IV is asserted against Defendant Charles Oldfield under RICO citing 18 U.S.C. § 1503 as the predicate offense. Plaintiff claims Oldfield conspired with Peters, Janoski-Haehlen, the UA Law School Registrar, and the UA Police to fabricate a false police report that led to his commitment to a psychiatric hospital. Counts V and VI list claims under 18 U.S.C. § 241, 242, and 249. He seeks unspecified monetary damages and injunctive relief "to cure all constitutional deprivations caused by Defendants and require Defendants to cease such constitutional deprivations in the future." (Doc. No. 1 at 36).

## Standard of Review

The Court is required to construe a *pro se* Complaint liberally and to hold it to a less stringent standard than one drafted by an attorney. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Plaintiff, however, claims to have both a law degree and an LLM. His pleadings therefore are not given the more generous construction allowed to those who are not trained in the law and who are proceeding without the benefit of counsel.

Pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.1999) (per curiam), District Courts are permitted to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid Complaint filed by a non-prisoner if it appears that the allegations or claims are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple*, 183 F.3d at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). Dismissal on a *sua sponte* basis is also authorized where the asserted claims lack an arguable basis in law, or if the District Court lacks subject matter jurisdiction over the matter. *Id.* at 480;

*see also Neitzke v. Williams*, 490 U.S. 319 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990).

## Discussion

Plaintiff asserts Counts I and III against Judge Joy Oldfield, who is not a Defendant in this action. Plaintiff describes an incident that involved Joy Oldfield, wife of Defendant Charles Oldfield that took place in 2012, well before Plaintiff was enrolled at the UA Law School. The incident did not involve the Plaintiff or cause him injury. It is entirely irrelevant to the allegations in the Complaint. In fact, the claims appear to be included for the sole purpose of harassing or embarrassing a named Defendant and his family. This is not an appropriate use of the Court's resources. These claims are dismissed as frivolous.

Plaintiff's claim in Count IV is asserted against Charles Oldfield, who is a Defendant in this action. Plaintiff asserts a violation of RICO claiming that Oldfield conspired with Peters, Janoski-Haehlen, the UA Law School Registrar (who is not a Defendant), and the UA Police to fabricate a false police report that led to his commitment to a psychiatric hospital. He cites 18 U.S.C. § 1503 (obstruction of justice) as his predicate offense of racketeering activity.

Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." In turn, §1962 states in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection ... (c) of this section.

A "pattern of racketeering activity" requires at least two acts of "racketeering activity" which are set forth in §1961(1). He cites to 18 U.S.C. § 1503, which is one of the racketeering activities listed in §1961(1). This statute, however, makes it a federal criminal offense to threaten, intimidate or retaliate against a federal juror or federal court officer. None of the actions described in the Complaint pertain to jury tampering or threatening federal court officers or personnel. This statute cannot serve as a predicate offense to support a RICO claim arising from the situation described in this Complaint. Plaintiff does not list any other predicate offenses upon which to base his claim. His RICO claim lacks an arguable basis in law.

Plaintiff's claims in Counts V and VI are based on violations of 18 U.S.C. §§ 241, 242, and 249. These are criminal statutes. They provide no private cause of action in a civil case. *Booth v. Henson*, No. 06-1738, 2008 WL 4093498, at *1 (6th Cir. Sept. 5, 2008); *U.S. v. Oguaju*, No. 02-2485, 2003 WL 21580657, *2 (6th Cir. July 9, 2003); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir.1994). They also lack an arguable basis in law.

Finally, although Plaintiff refers to violation of his constitutional rights, he does not include any claim pertaining to these violations in his list of claims. Even if the Court were to liberally construe his claim as it would for someone not educated in the law, his claims would be untimely. The constitution does not provide for damages. If Plaintiff were to proceed with these claims, he must do so under one of the civil rights statutes which authorizes an award of damages for alleged constitutional violations. *Sanders v. Prentice-Hall Corp. Sys*, 178 F.3d 1296 (6th Cir. 1999). As no other statutory provision appears to present an even arguably viable vehicle for the

assertion of his claims, the Court would construe them as arising under 42 U.S.C. § 1983. Ohio's two year statute of limitations for bodily injury applies to §1983 claims. *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995). The actions alleged in the Complaint took place between November 2017 and September 2018. This action was filed on September 16, 2022, well beyond the expiration of the two-year statute of limitations period.

## Conclusion

Accordingly, this action is dismissed. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.1999). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: November 30, 2022

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.